

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/20/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 10-36989 |
| LORENA M. BURRELL; aka | § | CHAPTER 13 |
| PARRIMORE; aka HOLLAND | § | |
| | § | |
| Debtor(s). | § | JUDGE ISGUR |
| | § | |
| | § | |
| LORENA M. BURRELL | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 10-3386 |
| | § | |
| AUTO-PAK-USA INC. D/B/A CAR | § | |
| NATIONS USA | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

This Memorandum Opinion considers the amount of actual and punitive damages to award Burrell for Auto-Pak's willful violation of the automatic stay. The Court:

- finds Burrell's actual damages other than legal fees to be $7,181.60. The Court awards Burrell this amount.

- finds Burrell's reasonable legal fees to be $54,516.95. The Court awards Burrell this amount.

- awards Burrell an additional $7,181.60 in punitive damages.

### Factual Background

Lorena Burrell purchased a 1999 BMW 528i from Auto-Pak in March of 2009 for $11,863.65. Burrell paid a $3,000.00 down payment to Auto-Pak and paid the balance of the purchase price with an $8,863.65 loan from Auto-Pak. In order to secure repayment of the $8,863.65 loan, Auto-Pak retained a lien on the BMW.

In July 2010, Auto-Pak repossessed the BMW. On August 17, 2010, Burrell filed a Chapter 13 bankruptcy petition. Burrell contacted Auto-Pak on multiple occasions between August 17 and August 24, 2010 to inform Auto-Pak of her bankruptcy filing. Auto-Pak refused to return the vehicle.

On August 25, 2010, Burrell initiated this adversary proceeding. Burrell alleges that, by failing to turnover the BMW after she filed her bankruptcy petition, Auto-Pak (i) violated the automatic stay; and (ii) committed the tort of conversion. Burrell seeks compensatory and punitive damages, attorney's fees, expenses, interest, and an order finding Auto-Pak in civil or criminal contempt.

Auto-Pak filed an Answer, (ECF No. 21), to Burrell's Complaint on December 30, 2010. The Answer admitted the following allegations (the "Admissions") from Burrell's Complaint: (i) Auto-Pak was notified via facsimile on August 17, 2010 of the filing of the bankruptcy case; (ii) Burrell contacted Auto-Pak on or about August 18, 2010 to arrange return of the BMW and Auto-Pak refused to turnover the BMW; (iii) Burrell forwarded a demand letter on August 19, 2010 regarding turnover of the BMW, to which Auto-Pak did not respond; (iv) Auto-Pak refused to turnover the BMW upon Burrell's request on August 24, 2010; (v) Auto-Pak intentionally and knowingly refused to turnover the BMW despite repeated notice of the chapter 13 case and after written and oral demands; and (vi) Auto-Pak continued to possess the BMW as of December 30, 2010.

After making the Admissions, Auto-Pak's Answer further detailed how Burrell's BMW was handled after repossession. Auto-Pak claimed that the BMW was sold to another auto dealer, Americars, on August 16, 2010—one day before Burrell filed for bankruptcy. Americars allegedly purchased the BMW for $3,400.00 through a private sale. Therefore, according to

Auto-Pak, there was no violation of the automatic stay or conversion of Burrell's BMW because Burrell's interest had been extinguished. Auto-Pak also claimed that it did not receive notice of Burrell's bankruptcy petition until August 25, 2010.

The Court held a trial on March 8, 2011. During trial, Auto-Pak presented evidence purporting to establish that Auto-Pak sold the BMW to Americars on August 16, 2010, for $3,400.00. This sale was allegedly accomplished solely through Auto-Pak's delivery of a bill of sale to Americars. After repossession but prior to the purported sale, Auto-Pak did not take any action to foreclose upon Burrell's ownership interest in the BMW. Auto-Pak also retained possession of the vehicle for at least two weeks after the purported sale and, according to Auto-Pak's Answer, as late as December 30, 2010.

In a Memorandum Opinion issued after the trial, the Court found that, even assuming Auto-Pak's portrayal of the facts is correct, Auto-Pak violated the automatic stay. Auto-Pak, after it repossessed Burrell's car, was acting in the capacity of a lien holder—not a dealer. A bill of sale by itself was thus insufficient to transfer title between Auto-Pak and Americars in this instance, even assuming a bill of sale would be sufficient to transfer title in a normal dealer-to-dealer sale. Therefore, even if some sort of purported sale occurred on August 16, 2010, Burrell still had legal and beneficial title to the vehicle upon filing for bankruptcy on August 17, 2010.

The Americars representative testified at trial that the car was not delivered to Americars until two to three weeks after the purported August 16, 2010 sale. Auto-Pak refused to turnover Burrell's car on several occasions during this period and therefore willfully violated the automatic stay.

The Court held a hearing on damages on July 8, 2011. At this hearing the Court heard oral argument on Auto-Pak's Motion to Reconsider. The Court subsequently denied the motion. (ECF No. 65). The Court held a hearing on legal fees on December 9, 2011.

## Analysis

**Actual Damages Other than Legal Fees**

The Bankruptcy Code states that an individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees. 11 U.S.C. § 362(k)(1).

At the July 8, 2011 hearing on damages, Burrell introduced into evidence a chart purporting to summarize actual damages other than legal fees. (July 8, 2011 Hr'g, Pl.'s Ex. 1). The chart displayed a total of $16,968.60. The Court finds the correct amount to be $7,181.60.[1]

The chart calculated Burrell's damages for loss of the vehicle's use at $9,600.00. Testimony indicated it would cost $200.00 per week to rent a used vehicle. This testimony was not contradicted. The chart multiplied the $200.00 per week cost by 48 weeks. Burrell testified at trial, however, that she was without a vehicle for only 32 weeks. The Court finds the correct amount, therefore, is $6,400.00.

Burrell testified that she paid $100.00 in insurance on the vehicle postpetition. This testimony was not contradicted. The court finds $100.00 in actual damages.

---

[1] The Court calculated this total by combining damages from loss of use of the vehicle ($6,400.00), insurance payments ($100.00), loss of income due to lack of transportation ($243.00), costs of driving to depositions and meetings in preparation for the adversary proceeding ($43.80), costs of driving to federal court for court appearances related to this adversary proceeding ($43.80), parking downtown for those appearances ($27.00), and lost income due to court appearances and trial preparation ($324.00).

Burrell testified that she missed three days of work due to lack of transportation and that her average daily income at the time was $81.00. This testimony was not contradicted. The Court finds $243.00 in actual damages.

Burrell's chart included $4,925.00 in actual damages for the cost of replacing the vehicle. Burrell testified at the July 8, 2011 damages hearing that she thought she only owed about $2,500.00 on the car, which in her opinion had a fair market value of $5,000.00 at the time of repossession. The evidence indicates that Burrell owed more than $2,500.00. Burrell is currently paying to Auto-Pak through her Chapter 13 plan an allowed secured claim in the amount of $6,018.99. (Case # 10-36989, ECF No. 39 at 4). This is an amount identical to the itemized amount referenced in the Notice of Sale of Repossessed Collateral sent by Auto-Pak to Burrell, i.e. the amount Burrell needed to pay to settle her debt with Auto-Pak and have her car returned. (Trial, Def.'s Ex. 4). Additionally, Burrell submitted an exhibit at trial indicating that she owed Auto-Pak at least $4,765.99 in principal and late fees at the time of repossession. (Trial, Pl.'s Ex. 17). Burrell also submitted into evidence a copy of the Motor Vehicle Retail Installment Sales Contract, which indicates that Auto-Pak is entitled to charge Burrell for the costs of enforcing the contract and, in certain situations, for the costs of repossessing the vehicle. (Trial, Pl.'s Ex. 16). Given this evidence, the Court finds that Burrell had no equity in the vehicle at the time of repossession. Other than losses related to being deprived of the vehicle's use, Burrell suffered no actual damages from Auto-Pak's conversion.

Burrell's chart includes the costs of travelling from Burrell's home to the offices of Baker & Associates on three different occasions for matters related to this adversary proceeding. (July 8, 2011 Hr'g, Pl.'f Ex. 1). The chart lists the distance at 29.2 miles roundtrip, for a total of 87.6 miles for all three trips. (*Id.*). Calculated at the rate of $.50 per mile, this amounts to $43.80. At

the hearing, the Court sustained Auto-Pak's objection that Burrell's counsel asked leading questions during this portion of Burrell's testimony. However, the chart itself was admitted into evidence and was not contradicted. The Court finds $43.80 in actual damages.

Burrell's chart includes the costs of traveling from Burrell's home to the federal courthouse on three occasions for hearings related to this adversary proceeding. (*Id.*). The chart lists the distance at 33.8 miles roundtrip. (*Id.*). This should result in a total distance of 101.4 miles for all three trips. The chart erroneously lists the total distance as 87.6 miles instead, which when multiplied by $.50 per mile results in $43.80 of damages instead of $50.70. At trial, after the Court sustained Auto-Pak's objection for leading the witness, Burrell's counsel asked Burrell what the costs were for the trips to the federal courthouse. Burrell said she couldn't recall the details of the calculations but remembered the total amount was $43.80. Due to Burrell's uncertain in-court testimony and the unresolved error in Burrell's exhibit, the Court finds only $43.80 in actual damages.

Burrell's chart and testimony indicate Burrell spent $27.00 on parking over three days for hearings at the federal courthouse. This testimony was not contradicted.

Burrell's chart lists lost income for six days due to hearings, depositions, trial preparation, and the trial related to this adversary proceeding. (*Id.*). Again, Burrell's average daily income at the time was $81.00, and so the chart lists the six-day total as $486.00. However, Burrell's testified that she only missed 3-4 days of work for these reasons. The Court finds the chart overstated the damages by $162.00, making the correct total only $324.00.

Burrell's chart listed $1,500.00 in actual damages for inconvenience. As stated at the hearing, Burrell's inconvenience is not compensable and the Court finds no additional related actual damages.

The Court finds Burrell's actual damages other than legal fees total $7,181.60.

**Punitive Damages**

In appropriate circumstances a Court may award punitive damages for a willful violation of the automatic stay. 11 U.S.C. § 362(k)(1).

The Court additionally awards Burrell punitive damages equal to her actual damages, excluding legal fees. This amount might be unreasonable if Auto-Pak were merely mistaken in its belief as to the law—i.e., only mistaken as to whether it effectively extinguished Burrell's rights in the vehicle prior to the bankruptcy petition.[2] The Court believes, however, that under the circumstances Auto-Pak's automatic stay violation is much more serious.

The Court does not believe any sale took place on August 16, 2010. The Court formed this belief after reviewing all of the pleadings and listening to the witnesses' testimony at trial. The Court believes that once Auto-Pak realized Burrell retained rights in the vehicle even after the repossession, it chose to back-date the bill of sale instead of returning the vehicle, in the erroneous belief that this would extinguish Burrell's interest. This decision makes Auto-Pak's automatic stay violation much more egregious. Under these exacerbating circumstances, the large punitive damages award is both reasonable and justified in order to deter Auto-Pak and other creditors from acting similarly in the future.

**Legal Fees**

Legal fees and costs constitute part of actual damages that courts must award for willful violations of the automatic stay. 11 U.S.C. § 362(k)(1). On December 9, 2011, the Court held a hearing on the amount of legal fees to be awarded. Burrell's counsel submitted into evidence an itemized fee invoice, (ECF No. 69), and testified at the hearing. Courts in the Fifth Circuit

---

[2] The violation would still, of course, be willful—but it would be much less egregious.

determine the reasonableness of legal fees in light of the guidelines set forth in *Johnson v. Georgia Highway Express*. 488 F.2d 714 (5th Cir. 1974). After considering the guidelines, the Court awards Burrell $54,516.95 in legal fees.

The size of the award necessitates elaboration on which factors justify such a large award. First, the adversary proceeding required extensive time and labor. The adversary proceeding started well over a year ago. There have been numerous dispositive motions, a trial, a motion to reconsider, and two hearings on damages—all of which required extensive preparation in addition to time spent in the courtroom. Burrell's counsel did not exaggerate the time required to litigate this adversary proceeding. This has not been an easy, routine automatic stay violation adversary proceeding. Second, this case presented a novel and difficult question of Texas law—whether a dealer/lienholder who repossesses a car may transfer valid title to another dealer via a bill of sale. Third, the legal services necessary to properly litigate this adversary proceeding required a high level of skill—in part because of the novel question of Texas law. Fourth, the hourly rates charged by the various attorneys at Baker & Associates are customary for these services and are in line with the hourly rates for attorneys of similar experience, reputation, and ability. The legal fee award is reasonable under the *Johnson v. Georgia Highway Express* analysis.

## Conclusion

The Court will issue a Judgment in accordance with this Memorandum Opinion.

SIGNED **December 16, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE